UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

NANCY DENARDI,

                Plaintiff,

            -against-

DRA IMAGING, P.C. and IMAGING SUPPORT
SERVICES, LLC,

                Defendants.
-------------------------------------------------------------x

**STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1**

07 CIV. 5794 (MGC)

      Defendants, DRA Imaging, P.C. ("DRA") and Imaging Support Services, LLC ("ISS"), by their undersigned counsel, Keane & Beane, P.C., for their Statement of Undisputed Facts pursuant to Rule 56.1 of the local rules of the United States District Court for the Southern and Eastern District of New York, asset that there is no genuine and material dispute to be tried as to the following facts:

**I.    Parties**

      1.     Plaintiff, Nancy DeNardi (the "Plaintiff") is a former employee of ISS. (Affidavit of Joseph Chiseri, duly sworn to on September 10, 2008 ["Chiseri Aff."], ¶¶ 21, 32, Exhs. I, K; Declaration of Stephanie Burns, Esq., dated September 9, 2008 ["Burns Dec."], Exhs. C, J).

      2.     DRA is a professional corporation duly organized and existing pursuant to the laws of the State of New York. (Chiseri Aff. ¶¶ 5, 6, Exhs. B, C).

      3.     ISS is a limited liability company organized and existing pursuant to the laws of the State of New York. (Chiseri Aff. ¶ 4, Exhs. A, D).

## II. Plaintiff's Employment

4. Plaintiff was hired by ISS on or about September 7, 1999. (Plaintiff Tr. [Burns Dec. Exh. K][1] p. 12: 14-17; Chiseri Aff. ¶ 22, Exh. J; Burns Dec. ¶ 4, Exh. C).

5. Plaintiff was hired as an insurance representative for the Billing Department. (Plaintiff Tr. [Burns Dec. Exh. K] p. 19:9 - 21:8).

6. The decision to hire Plaintiff was made by Nancy Rasmussen. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 18:12 -19:17; Chiseri Aff. ¶ 22).

7. At the time she hired Plaintiff, Ms. Rasmussen was an employee of ISS. (Chiseri Aff. ¶ 22).

8. While employed by ISS, Plaintiff has been supervised by Nancy Rasmussen, Gail Platt and/or Virginia Barkanyi. (Plaintiff Tr. [Burns Dec. Exh. K] p. 23:2-16, p. 38:5-15, pp. 41:16 - 42:25).

9. From in or about June 2004 until her termination, Plaintiff's direct supervisor was the Director of Billing of ISS, Virginia Barkanyi. (Plaintiff Tr. [Burns Dec. Exh. K] p. 53:7-11; Chiseri Aff. ¶ 18).

10. During her employment by ISS, Plaintiff held the positions of insurance representative, insurance rep lead, and billing department lead. (Plaintiff Tr. [Burns Dec. Exh. K] p. 28:2-6, p. 53:4-11; Newton Tr. [Burns Dec. Exh. M][2] p. 40:16-24).

---

[1] "Plaintiff Tr." cites to the transcript of the deposition of Plaintiff commenced on March 20, 2008 and continued on April 22, 2008. Relevant excerpts from Plaintiff's deposition transcript are annexed to the accompanying Declaration of Stephanie L. Burns, Esq., dated September 9, 2008 ("Burns Declaration"), in Exhibit "K".

[2] "Newton Tr." cites to the transcript of the deposition of Mark Newton held on June 20, 2008. Relevant excerpts from the transcript of Mr. Newton's deposition are annexed to the accompanying Burns Declaration in Exhibit "M".

11.     Plaintiff's hourly wage increased from $9.75 to $18.50 during the course of her employment by ISS. (Burns Dec. ¶¶ 4, 6, Exhs. D, J).

12.     In or about June 2005, Plaintiff's hourly wage was increased to $18.50. This wage was not altered or changed prior to her termination on or about May 8, 2006. (Burns Dec. ¶ 6, Exh. J).

13.     ISS issued payroll checks to Plaintiff from on or about September 24, 1999 to on or about May 26, 2006. (Chiseri Aff. ¶ 28; Burns Dec. ¶ 6, Exh. J).

14.     No payroll checks, W-2 Forms or 1099 Forms were issued to Plaintiff by DRA. (Chiseri Aff. ¶ 29).

15.     ISS issued W-2 forms to Plaintiff for tax years 1999, 2000, 2001, 2002, 2003, 2004, 2005 and 2006. (Chiseri Aff. ¶ 28, Exh. I).

### III.    DRA and ISS are Independent, Distinct Entities

16.     Dutchess Radiology Associates, P.C. is a professional corporation that was incorporated in or about November 1989. (Chiseri Aff. ¶ 5, Exh. B).

17.     ISS is a limited liability company that was formed in or about July 1996. (Chiseri Aff. ¶ 4, Exh. A).

18.     When formed the members of ISS were Vassar Brothers Hospital and Dutchess Radiology Associates, P.C. (Chiseri Aff. ¶¶ 4, 7, Exh. A).

19. In or about July 1996, ISS and Dutchess Radiology Associates, P.C. entered into an agreement under which, for specified compensation, ISS would provide management, billing, transcription and equipment leasing services. (Chiseri Aff. ¶ 9, Exh. F).

20. In or about March 1998, Dutchess Radiology Associates, P.C. changed its corporate name to DRA Imaging, P.C. (Chiseri Aff. ¶ 6, Exh. C).

21. In or about July 2000, Mr. Mark Newton was hired by ISS as its Chief Financial Officer. (Chiseri Aff. ¶ 13; Newton Tr. [Burns Dec. Exh. M], p. 7:6-12).

22. In or about April 2004, the employment contract for Mr. Newton was assigned by ISS to DRA. (Chiseri Aff. ¶ 12, Exh. G).

23. As a result of the July 1996 agreement between Dutchess Radiology Associates, P.C. (which subsequently changed its name to DRA) and ISS, from on or about July 1, 1996 to on or about November 1, 2006, with the exception of Joseph Chiseri and Mr. Newton, DRA only employed doctors, physician assistants, nurses and radiological technicians. (Chiseri Aff. ¶ 11, Exh. F).

24. During this same time period, DRA did not employ any billing personnel. Their services were billed to their patients and the insurance providers of their patients by ISS under the terms of the Management and Resource Agreement. (Chiseri Aff. ¶ 11, Exh. F).

25. Despite the assignment of his employment contract, Mr. Newton remained obligated to provide services to ISS, which included, *inter alia*, the hiring, firing and disciplining of employees of the Billing Department of ISS. (Chiseri Aff. ¶¶ 12, 14, Exh. G ).

26.     After the assignment of his employment contract from ISS to DRA, Mr. Newton continued to supervise the employees of ISS. (Chiseri Aff. ¶ 14, Exh. G).

27.     In September 1999, Nancy Rasmussen, Gail Platt, Virginia Barkanyi and Susan Kalogiannis were all employed by ISS. (Chiseri Aff. ¶¶ 18, 20-22).

28.     At all times from September 1999 to November 1, 2006, Virginia Barkanyi and Susan Kalogiannis were employees of ISS. (Chiseri Aff. ¶¶ 18, 20).

29.     Nancy Rasmussen left ISS in or about August 2000. (Plaintiff Tr. [Burns Dec. Exh. K] p. 38:10-15). Gail Platt left ISS in or about February 2004. (Plaintiff Tr. [Burns Dec. Exh. K] p. 53:7-11).

30.     From April 2000 to November 1, 2006, Ms. Gustin was an employee in the Billing Department of ISS. (Chiseri Aff. ¶ 19).

31.     Jacqueline Bourne was hired as an employee in the Billing Department of ISS on or about August 1, 2001. Ms. Bourne continued to be a full-time employee of ISS until November 1, 2006 when she became an employee of DRA. (Chiseri Aff. ¶ 23).

32.     In or about September 2004, Heather DeNardi, the daughter of Plaintiff, was hired by ISS to work part-time in its Billing Department. (H. DeNardi Tr. [Burns Dec. Exh. O][3] p. 16:18-19; Barkanyi Tr. [Burns Dec. Exh. L][4] pp. 121:9 – 123:14; Chiseri Aff. ¶ 24).

---

[3] "H. DeNardi Tr." cites to the transcript of the deposition of Heather DeNardi taken on July 18, 2008. Relevant excerpts from this transcript are annexed to the accompanying Burns Declaration in Exhibit "O".

[4] "Barkanyi Tr." cites to the transcript of the deposition of Virginia Barkanyi commenced on June 17, 2008 and continued on July 18, 2008. Relevant excerpts from the transcript of Ms. Barkanyi's deposition are annexed to the accompanying Burns Declaration as Exhibit "L".

33. On or about March 27, 2006, ISS hired Shari McCauley to be a supervisor in its Billing Department. (Chiseri Aff. ¶ 25; Plaintiff Tr. [Burns Dec. Exh. K] p. 119:5-13; Burns Dec. Exhs. H, I).

34. On or about March 29, 2006, Plaintiff met with Ms. Barkanyi concerning her memorandum regarding Ms. McCauley and the chart she circulated that set forth the work assignments of the employees in the Billing Department. Plaintiff expressed her concern that the chart made it appear that she had been demoted from a supervisor to data entry. Ms. Barkanyi reviewed the chart, told Plaintiff it had not occurred to her that the chart could be read as Plaintiff was reading it and assured Plaintiff that the level of her position had not changed only her functions had changed to maintaining the Cerner Interface. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 187:7 – 188:14; pp. 470:18 – 472:10).

### IV. Plaintiff's Disability Leave And Return To Work

35. Due to a surgical procedure related to a cancer diagnosis, Plaintiff took a disability leave from on or about October 8, 2005 through on or about December 4, 2005. (Plaintiff Tr. [Burns Dec. Exh. K] p. 67:20-21; Barkanyi Tr. [Burns Dec. Exh. L] p. 152:9-15; Burns Dec. ¶ 4, Exh. E]).

36. When Plaintiff was in the hospital during this leave, nearly every day Ms. Barkanyi, Ms. Bourne, Ms. Gustin and Ms. Kalogiannis visited her. (Plaintiff Tr. [Burns Dec. Exh. K] p. 88:6-23; H. DeNardi Tr. [Burns Dec. Exh. O] p. 38:10-24).

37. Plaintiff returned to work from her disability leave on or about December 5, 2005. (Plaintiff Tr. [Burns Dec. Exh. K] p. 97:6-7; Barkanyi Tr. [Burns Dec. Exh. L] p. 152:9-15).

38. After Plaintiff returned to work until sometime in or about April 2006, on a bi-weekly basis, Plaintiff was absent for approximately two (2) to four (4) hours on Tuesday and half (1/2) to one (1) hour on Thursday for medical procedures in connection with chemotherapy treatments. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 94:5 - 97:5, pp. 105:25 – 106:12; Barkanyi Tr. [Burns Dec. Exh. L] pp. 159:24 – 160:24).

39. When Plaintiff returned to work, Plaintiff was cancer free. Plaintiff under went chemotherapy treatments as a preventive measure. (Plaintiff Tr. [Burns Dec. Exh. K] p. 99:2-6).

40. After returning from her disability leave, Plaintiff continued to perform her Billing Department lead functions. There was no change in her job functions until approximately March 2006. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 117:5 – 119:13, pp. 128:23 – 129:13).

41. In or about 2003, DRA and ISS decided to purchase software from Cerner to have a single integrated computer program/system to manage all services and functions performed by DRA and ISS – from making patient appointments, to examination, to transcription, to image storage, to billing and to collection. (Plaintiff Tr. [Burns Dec. Exh. K] p. 63:17-25; Newton Tr. [Burns Dec. Exh. M] p. 62:22 – 65:6).

42. During the implementation of the Cerner software, it became apparent that the Cerner billing system was not adequate for DRA's billing needs. So, DRA and ISS decided to keep the Billing Department on Vital Works and develop a custom made interface between the two programs – Cerner and Vital Works. (Plaintiff Tr. [Burns Dec. Exh. K] p. 65:2-16; Newton Tr. [Burns Dec. Exh. M] p. 64:21 – 66:2).

43. DRA and ISS went live with the Cerner program in November 2005, when Plaintiff was on disability leave. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 65:17 – 66:2; Newton Tr. [Burns Dec. Exh. M] p. 62:3-12).

44. Sometime after she returned to work, Plaintiff was asked by Ms. Barkanyi if she was willing to take over operating the Cerner Interface for the Billing Department. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 234:20- 235:3; Barkanyi Tr. [Burns Dec. Exh. L] pp. 193: 9 - 195:19)

45. Ms. Barkanyi told Plaintiff that if she accepted the Cerner Interface position that her other work would be reassigned and she would solely work on the Cerner Interface. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 233:21 - 234:19; Barkanyi Tr. [Burns Dec. Exh. L] pp. 196:25-197:12)

46. Plaintiff agreed to this change in her work responsibilities. (Plaintiff Tr. [Burns Dec. Exh. K] p. 235:12-20; Barkanyi Tr. [Burns Dec. Exh. L] pp. 193:9 - 195:19, pp. 196:25 - 197:12).

47. Plaintiff was trained on the Cerner Interface by Carol Gustin. (Plaintiff Tr. [Burns Dec. Exh. K] p. 145:10-21).

48. The Cerner Interface was a critical assignment in the Billing Department. (Newton Tr. [Burns Dec. Exh. M] p. 85: 4-22; Barkanyi Tr. [Burns Dec. Exh. L] p. 193:3-19; Chiseri Aff. ¶ 31).

49. No one can be billed for services performed by DRA until they passed through the Cerner Interface. (Plaintiff Tr. [Burns Dec. Exh. K] p. 373:21-24; Chiseri Aff. ¶ 31).

50. There was no change in Plaintiff's hourly wage when her responsibilities changed. (Burns Dec. Exh. J).

51. After returning from her disability leave, Plaintiff earned the following total hours of overtime per paycheck:

| Pay Check Date | Total Overtime Hours |
| --- | --- |
| 12/23/05 | 11 |
| 1/6/06 | 8 |
| 1/20/06 | 10.5 |
| 2/3/06 | 9.75 |
| 2/17/06 | 17.75 |
| 3/3/06 | 21.25 |
| 3/17/06 | 6.75 |
| 4/14/06 | 10.25 |
| 4/28/06 | 4.75 |
| 5/12/06 | 2.5 |

(Chiseri Aff. ¶ 30; Burns Dec. ¶¶ 5, 6, 10, Exhs. G, J, N).

## V. Plaintiff's Termination

52. Starting in or about September 2002, ISS employees were required to clock in and out of a computer based time clock system. To clock in an employee started a program on his/her computer and entered a four (4) digit code. Likewise, ISS employees clocked themselves out using the same program and entering the same code. (Plaintiff Tr. [Burns Dec. Exh. K] p. 382:8-21; Newton Tr. [Burns Dec. Exh. M] pp. 72:8 - 73:5; H. DeNardi Tr. [Burns Dec. Exh. O] p. 32:15-22; Chiseri Aff. ¶ 26).

53.    Employees were instructed to keep their four (4) digit code confidential and were told they were the only ones who should clock themselves in and out using the time clock program. (Chiseri Aff. ¶ 26).

54.    On or about May 5, 2006, Heather DeNardi left the Billing Department to attend a class and/or study group without clocking herself out. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 388:2 – 391:19; H. DeNardi Tr. [Burns Dec. Exh. O], p. 72: 15-18, p. 73: 18-25).

55.    Sometime after Heather DeNardi had left, Plaintiff used her daughter's employee code to clock her out at approximately 9:15 a.m. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 388:2 – 391:19).

56.    On May 5, 2006, sometime after 10:00 a.m., Plaintiff and Ms. Barkanyi discussed whether Plaintiff had clocked her daughter out at approximately 9:15 a.m. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 388:2 – 391:19; Barkanyi Tr. [Burns Dec. Exh. L] p. 267:11-25).

57.    Before leaving for the day on May 5, 2006, Ms. Barkanyi met with Mr. Newton concerning Plaintiff. (Newton Tr. [Burns Dec. Exh. M] pp. 83:20 – 84:18; Barkanyi Tr. [Burns Dec. Exh. L] p. 290:15-22).

58.    During this meeting, Ms. Barkanyi reported to Mr. Newton the following: (a) when she first asked Plaintiff whether she had clocked her daughter out at 9:15 a.m., Plaintiff denied doing so; and (b) after further discussion, Plaintiff admitted clocking out her daughter. (Newton Tr. [Burns Dec. Exh. M] pp. 83:20 – 84:18).

59. Ms. Barkanyi lacked the authority to independently fire a full-time employee of the Billing Department. (Newton Tr. [Burns Dec. Exh. M] p. 97:16-25; Barkanyi Tr. [Burns Dec. Exh. L] p. 239:8-17).

60. Based on his conversations with Ms. Barkanyi, Mr. Newton believed Plaintiff had lied to Ms. Barkanyi about clocking out her daughter on May 5, 2006. (Newton Tr. [Burns Dec. Exh. M] pp. 83:20 – 84:18, pp. 93:18 – 94: 3; pp. 98:21 – 99:23).

61. The decision to terminate Plaintiff was made by Mark Newton. (Newton Tr. [Burns Dec. Exh. M] pp. 98:21 – 99:23).

62. On May 8, 2006, Mr. Newton and Ms. Barkanyi met with Plaintiff to inform her that she was being terminated. (Plaintiff Tr. [Burns Dec. Exh. K] p. 402:3-15, pp. 409:25-413:25; Newton Tr. [Burns Dec. Exh. M] pp. 107:25 - 108:12; Barkanyi Tr. [Burns Dec. Exh. L] p. 278:5-16).

63. On May 8, 2008, Mr. Newton sent his superiors an email stating:

> FYI. Nancy DeNardi and Heather DeNardi were terminated today. Nancy punched out her daughter Heather on Friday well after Heather left. Ginny picked up on it, and when she questioned Nancy, Nancy lied to her. Only when Ginny pushed her with the facts, did Nancy later admit the lie. Nancy had a supervisory role in the billing dept. Ginny needs to trust her employees and especially her deputies. Ginny and I discussed it Friday, then agreed to sleep on it over the weekend. Joe and I discussed it today also. The severe consequence of termination was based on the lying even more than the stealing. Sorry for unwelcome news.

(Newton Tr. [Burns Dec. Exh. M] p. 110:4-23; Chiseri Aff. ¶ 32, Exh. K).

64.     On May 9, 2006, Ms. Barkanyi also prepared a typed statement for the Human Resources Department concerning the termination of Plaintiff, which states:

> Nancy DeNardi was terminated on 5/8/06 for falsifying time records for another employee, Heather DeNardi, her daughter.
>
> On 5/5/06 Heather DeNardi left the office without clocking out. Carol, Jackie and myself were looking for Heather (who did not have approval to work that morning) from 8:30 am on but could not locate her. A check of the time clock shortly after 9:00 am showed that she did not clock out. Another time clock check at 9:20 indicated a time clock punch at 9:14. I approached Nancy DeNardi and told her we had been looking for Heather for almost an hour. She stated Heather was here. I again asked where Heather had been for the last hour and where she is right now. Nancy then changed her answer and said Heather just left. I asked her if she had clocked Heather out since I knew that she was not on DRA premises. She stated that no she did not clock her out. I told her that I knew Heather had not been here for the last hour and that I wanted the truth as to who clocked Heather out. Nancy then admitted that she clocked her out.

(Burns Dec. ¶ 4, Exh. F ; Barkanyi Tr. [Burns Dec. Exh. L] pp. 275:8 – 279:6).

Dated:  White Plains, New York
        September 10, 2008

                                    **KEANE & BEANE, P.C.**

                            By:     _Stephanie Burns_
                                    Stephanie L. Burns (SB 3467)
                                    Attorneys for Defendants
                                    445 Hamilton Avenue, 15th Floor
                                    White Plains, New York 10601
                                    (914) 946-4777

To:     Davida Perry, Esq.
        SCHWARTZ & PERRY, LLP
        295 Madison Avenue
        New York, NY 10071
        (212) 889-6565