UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

NANCY DENARDI,

              Plaintiff,

         -against-

DRA IMAGING, P.C. and IMAGING SUPPORT
SERVICES, LLC,

              Defendants.

----------------------------------------------------------------------- x

              07 CIV. 5794 (MGC)


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


KEANE & BEANE, P.C.
Attorneys for Defendants
445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS.......................................................................4

III.    ARGUMENT...............................................................................................................8

        POINT I
        STANDARD OF REVIEW........................................................................................8

        A.      The Legal Standard Applicable To Motions
                For Summary Judgment........................................................................................8

        B.      The Legal Standard Applicable To
                Plaintiff's Discrimination Claims.......................................................................10

        POINT II
        PLAINTIFF CANNOT ESTABLISH A *PRIMA
        FACIE* CASE THAT SHE WAS PERCEIVED TO
        BE DISABLED BY DEFENDANTS...............................................................................13

        POINT III
        DEFENDANTS HAD LEGITIMATE,
        NON-DISCRIMINATORY REASONS FOR
        TERMINATING PLAINTIFF'S EMPLOYMENT..........................................................19

        POINT IV
        PLAINTIFF CANNOT ESTABLISH A *PRIMA
        FACIE* CASE AGAINST DRA - DRA WAS
        NOT HER EMPLOYER ...............................................................................................20

        POINT V
        PLAINTIFF'S NYHRL CLAIM SHOULD BE
        DISMISSED ...............................................................................................................22

IV.     CONCLUSION ...........................................................................................................23

## TABLE OF AUTHORITIES

### Cases

*Abdu-Brisson v. Delta Air Lines, Inc.*,
  239 F.3d 456 (2d Cir.),
  *cert denied*, 534 U.S. 993, 122 S.Ct. 460 (2001) ....................................................................16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505 (1986) ..............................................................................9, 10

*Bardell v. New York State Bd. of Law Examiners*,
  226 F.3d 69 (2d Cir. 2000) ................................................................................................17

*Blue v. Koren*,
  72 F.3d 1075 (2d Cir. 1995) ...........................................................................................9, 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ...............................................................................8, 9

*Colwell v. Suffolk County Police Dep't*,
  158 F.3d 636 (2d Cir. 1998),
  *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1253 (1999) ............................................................11

*First National Bank of Arizona v. Cities Service Co.*,
  391 U.S. 253, 88 S.Ct. 1575 (1968) .....................................................................................9

*Giordano v. City of New York*,
  274 F.3d 740 (2d Cir. 2001) ..........................................................................11, 13, 16, 17

*Jordan v. Bates Advertising Holdings, Inc.*,
  46 A.D.3d 440, 848 N.Y.S.2d 127 (1st Dep't 2007)..............................................................23

*Knight v. U.S. Fire Insurance Co.*,
  804 F.2d 9 (2d Cir. 1986),
  *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570 (1987) ..................................................................9

*Lennon v. Miller*,
  66 F.3d 416 (2d Cir. 1995) ................................................................................................23

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S.Ct. 1348 (1986) ....................................................................................9

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S.Ct. 1817 (1973) ....................................................................................10

*Meiri v. Dacon,*
   759 F.2d 989 (2d Cir.),
   *cert. denied*, 474 U.S. 829, 106 S.Ct. 91 (1985) .................................................................10

*Quaratino v. Tiffany & Co.,*
   71 F.3d 58 (2d Cir. 1995) ............................................................................................12

*Reeves v. Johnson Controls World Service, Inc.,*
   140 F.3d 144 (2d Cir. 1998) ........................................................................................22

*Reeves v. Sanderson Plumbing Products, Inc.,*
   530 U.S. 133, 120 S.Ct. 2097 (2000) .........................................................................12

*Sista v. CDC IXIS North America, Inc.,*
   445 F.3d 161 (2d Cir. 2006) ........................................................9, 10, 11, 12, 20

*St. Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502, 113 S.Ct. 2742 (1993) ...........................................................10, 12, 20

*Stone v. Manhattan and Bronx Surface Transit Operating Auth.,*
   539 F.Supp.2d 669 (E.D.N.Y. 2008) .....................................................................10, 12

*Tubens v. Police Dep't of City of New York,*
   48 F.Supp. 2d 412 (S.D.N.Y. 1999) .......................................................................17, 18

*United Mine Workers of America v. Gibbs,*
   383 U.S. 715, 86 S.Ct. 1130 (1966) ............................................................................23

*United States v. New York State Dep't of Motor Vehicles,*
   82 F.Supp.2d 42 (E.D.N.Y. 2000) ...............................................................................20

*Verri v. Nanna,*
   972 F.Supp. 773 (S.D.N.Y. 1997) ...............................................................................10

**Statutes**

42 U.S.C. § 12111(5)(A) ..................................................................................................20

Fed. R. Civ. P. 56....................................................................................................1, 8, 23

Section 12112(a) of Title I of the Americans with
   Disabilities Act .......................................................................................................1

Section 296(1)(a) of the New York State Human Rights
   Law ........................................................................................................................1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

NANCY DENARDI,

        Plaintiff,

        -against-

DRA IMAGING, P.C. and IMAGING SUPPORT
SERVICES, LLC,

        Defendants.

------------------------------------------------------------------ x

07 CIV. 5794 (MGC)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    PRELIMINARY STATEMENT

Defendants DRA Imaging P.C. ("DRA") and Imagining Support Services, LLC ("ISS") (collectively, the "Defendants"), submit this Memorandum of Law in support of their motion for an Order, pursuant to Fed. R. Civ. P. 56, granting summary judgment in favor of Defendants and dismissing the Complaint of Plaintiff, Nancy DeNardi ("Plaintiff").

Plaintiff is a former employee of ISS and a cancer survivor. Plaintiff was employed by ISS from on or about September 7, 1999 to May 8, 2006 in its Billing Department. Following Plaintiff's termination on May 8, 2008, Plaintiff filed a complaint with the EEOC and then commenced the instant lawsuit claiming violations of Section 12112(a) of Title I of the Americans with Disabilities Act ("ADA") and Section 296(1)(a) of the New York State Human Rights Law ("NYHRL") alleging she was demoted and then terminated as a result of her employer perceiving her to be disabled. Nothing could be farther from the truth.

Pursuant to the *McDonnell-Douglas* three (3) step analysis for reviewing ADA and NYHRL discrimination claims, Plaintiff must initially demonstrate a *prima facie* case of discrimination based upon a perceived disability. Second, assuming Plaintiff can present a *prima*

*facie* case, Defendants must proffer a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Third, once legitimate, nondiscriminatory reasons for the termination are presented, Plaintiff bears the ultimate burden of establishing Defendants' proffered reasons are a pretext and the real reason Plaintiff was terminated was because Defendants perceived her to be disabled. Application of this three (3) step test confirms that summary judgment is appropriate in this case.

Plaintiff can not establish a *prima facie* case of discrimination based upon a perceived disability. Plaintiff has not articulated what disability she is perceived to have nor what major life function this perceived disability purportedly has substantially limited. The contention that Plaintiff was perceived to have a disability that substantially limited a major life function is belied by the facts of this case. Plaintiff returned to work from a disability leave on or about December 5, 2005. Shortly after her return, Ms. Barkanyi asked Plaintiff if she was willing to take over the day-to-day operations of the Cerner Interface in the Billing Department. The Cerner Interface is critical to the financial health of DRA and ISS. No services performed by DRA can be billed by ISS until the services pass through the Cerner Interface. Certainly it is not something that would be assigned to an employee perceived to be incapable of working due to a disability. Significantly, the undisputed evidence establishes that Plaintiff agreed to this change in her duties and responsibilities, was trained for her new duties and responsibilities and began performing them independently approximately three (3) months after she returned to work. These facts fail to provide a basis for finding that Defendants considered Plaintiff disabled or that any disability she may or may not have had contributed to the determination to terminate her employment. Plaintiff's inability to establish essential elements of her claims that her alleged disability (whatever it may be) substantially limited a major life function or that her alleged

disability was a factor in her termination, makes it clear that summary judgment is appropriate in this case.

Moreover, Plaintiff cannot establish a *prima facie* case of disability discrimination against DRA, because it is not her employer and did not take any adverse action against her. Documentary evidence establishes that Plaintiff was employed by ISS not DRA. Plaintiff was hired by an ISS employee and directly supervised at all times by ISS employees. The decision to terminate Plaintiff was made by Mark Newton in the discharge of his obligation to provide services to ISS not as Chief Financial Officer ("CFO") of DRA. ISS and DRA are distinct entities. DRA is a professional corporation incorporated in 1989. ISS is a limited liability company that leased equipment and provided certain administrative services (i.e. transcription and billing) to DRA pursuant to a written agreement. ISS was created in or about July 1996 and, throughout Plaintiff's employment the members of ISS were DRA and Vassar Brothers Hospital ("Vassar").

Even if the Court finds Plaintiff can establish a *prima facie* case for discrimination under the ADA or the NYHRL, which Defendants submit is not possible, Defendants have set forth legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Each employee of ISS has been instructed to only clock themselves in and out using its computerized time clock program and to keep his/her individualized, assigned code for doing so confidential. It is undisputed that Plaintiff, a supervisor in the Billing Department, clocked out her daughter sometime after her daughter had left the offices of ISS on May 5, 2008. It is also undisputed that Mr. Newton, who made the decision to terminate Plaintiff, did so believing Plaintiff initially lied to her direct supervisor, Ms. Barkanyi, about clocking out her daughter. Plaintiff denies that she lied to Ms. Barkanyi; however, it is undisputed that Ms. Barkanyi told Mr. Newton that Plaintiff

lied to her.    Accordingly, ISS had legitimate, non-discriminatory business reasons for terminating Plaintiff.

Plaintiff will not be able to present any evidence that these preferred reasons for her termination are a pretext or that she was discriminated against on the basis of a perceived disability.   In fact, Plaintiff's belief that she was a victim of discrimination based on a perceived disability is nothing more than speculation and conjecture.   This is insufficient to rebut the legitimate and non-discriminatory reasons preferred for Plaintiff's termination.

Thus, Defendants respectfully assert they are entitled to summary dismissal of this action. Alternatively, Defendants assert DRA should be dismissed from this action because it was not Plaintiff's employer and took no actions with regard to her employment.

## II.    STATEMENT OF UNDISPUTED FACTS

In or about November 1989, Dutchess Radiology Associates, P.C. was incorporated. (Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated September 9, 2008 [cited to herein as "Rule 56.1 Statement"], ¶ 16).  In or about July 1996, Dutchess Radiology Associates, P.C. together with Vassar Brothers Hospital created a limited liability company – ISS.  (Rule 56.1 Statement, ¶¶ 17, 18).  At or about the time of its creation, ISS entered into an agreement with Dutchess Radiology Associates, P.C. which is titled the "Management and Resources Agreement" (the "MRA").  (Rule 56.1 Statement, ¶ 19; Affidavit of Joseph Chiseri, duly sworn to on September 10, 2008 [cited to herein as "Chiseri Aff."], ¶ 9, Exh. F).  In the MRA, ISS agreed to provide, for specified compensation, *inter alia,* management, billing, transcription and equipment leasing services to Dutchess Radiology Associates, P.C.  (*Id.*).  After entering into the MRA, Dutchess Radiology Associates, P.C. only employed physicians, physician assistants, nurses and radiological technicians.  (Rule 56.1 Statement, ¶ 23).  In or about March 1998,

-4-

Dutchess Radiology Associates, P.C. changed its name to DRA Imaging, P.C. (Rule 56.1 Statement, ¶ 20).

In September 1999, Plaintiff was hired by ISS to work in its Billing Department as an insurance representative. (Rule 56.1 Statement, ¶¶ 4, 5). The decision to hire Plaintiff was made by Nancy Rasmussen, who was an ISS employee. (Rule 56.1 Statement, ¶¶ 5, 6). During her employment by ISS, Plaintiff advanced from insurance representative to insurance representative lead to Billing Department lead and her salary increased at various increments from $9.75 to $18.50 an hour. (Rule 56.1 Statement, ¶¶ 10, 11). Throughout her employment, Plaintiff received payroll checks from ISS and, on an annual basis, W-2 Forms from ISS. (Rule 56.1 Statement, ¶¶ 13, 15).

In 2000, ISS hired Mark Newton to be its Chief Financial Officer. (Rule 56.1 Statement, ¶ 21). In 2004, his employment contract was assigned from ISS to DRA but Mr. Newton remained obligated to provide personal services to ISS. (Rule 56.1 Statement, ¶¶ 22, 25). These services included the hiring, firing and disciplining of Billing Department employees. (Rule 56.1 Statement, ¶ 25). In or about September 2002, ISS implemented a computer based time clock system. (Rule 56.1 Statement, ¶ 52). ISS employees were required to clock in and out of work by entering an individualized code into a computer program. (Id.). ISS employees were instructed to keep these codes confidential and to only clock themselves in and out. (Rule 56.1 Statement, ¶ 53).

In or about 2003, DRA and ISS decided to purchase software from Cerner that would allow DRA to have a single integrated computer system to manage all services and functions related to its medical practice from patient appointments, to medical services, to transcription, to image storage, to billing and to collection. (Rule 56.1 Statement, ¶ 41). During the

implementation of this program, DRA and ISS realized the Cerner billing system was not adequate. (Rule 56.1 Statement, ¶ 42). As a result, DRA and ISS decided to have the Billing Department of ISS continue to use the Vital Works program and develop an interface between the Cerner program(s) and Vital Works. (*Id.*). DRA and ISS finally went live with the Cerner system and the Interface between it and Vital Works (the "Cerner Interface") in November 2005. (Rule 56.1 Statement, ¶ 43).

In or about September 2004, Plaintiff's daughter, Heather DeNardi, became a part-time employee of ISS in its Billing Department. (Rule 56.1 Statement, ¶ 32).

In October 2005, Plaintiff was diagnosed with colon cancer. (Compl. ¶ 9).[1] In connection with that diagnosis, Plaintiff was hospitalized and underwent surgery. (Compl. p. 3). As a result, Plaintiff was out of work from on or about October 8, 2005 through December 4, 2005. (Rule 56.1 Statement, ¶ 35). In or about November 2005, Plaintiff began receiving chemotherapy treatments. (Compl. ¶ 13). These treatments occurred every other week on Tuesdays and Thursdays. (Rule 56.1 Statement, ¶ 38).

Plaintiff returned to work on December 5, 2005 without any medical restrictions other than her continued chemotherapy sessions every other week. (Compl. ¶ 13; Rule 56.1 Statement, ¶¶ 37-39). Sometime after her return, the Director of the Billing Department of ISS, Ms. Barkanyi, asked Plaintiff if she was willing to take over operating the Cerner Interface. (Rule 56.1 Statement, ¶ 44). This was and is a critical job assignment within the Billing Department, because the services performed by DRA cannot be billed unless and until they pass through the Cerner Interface. (Rule 56.1 Statement, ¶¶ 48, 49). So, one hundred (100%) percent of DRA's

---

[1] "Compl." references the Complaint in this action, which is annexed to the accompanying Declaration of Stephanie L. Burns ("Burns Dec."), dated September 9, 2008, as Exhibit "A".

revenue passes through the Cerner Interface and DRA's services account for approximately seventy-five percent (75%) of the billing services performed by ISS and its employees. (Chiseri Aff. ¶ 31; Plaintiff Tr. [Burns Dec. Exh. K][2] p. 373:21-24). Plaintiff agreed to take over operating the Cerner Interface. (Rule 56.1 Statement, ¶ 46).

Plaintiff testified that her job functions and duties changed in or about March 2006 when she began to be trained on the Cerner Interface. (Rule 56.1 Statement, ¶ 40; Plaintiff Tr. [Burns Dec. Exh. K] p. 373:21-24). At or about that time, most of Plaintiff's existing responsibilities were redistributed to other employees in the Billing Department to allow her to be trained by Ms. Carol Gustin on the operation of the Cerner Interface and then, after her training, to allow her adequate time to operate the Cerner Interface. (Rule 56.1 Statement, ¶¶ 44, 47; Barkanyi Tr. [Burns Dec. Exh. L][3] pp 196:25-197:12).

At the end of March, Ms. Barkanyi announced that Shari McCauley was joining the Billing Department as a supervisor. (Burns Dec. Exh. H). When Plaintiff informed Ms. Barkanyi that certain documents Ms. Barkanyi circulated concerning the hiring of Ms. McCauley suggested to Plaintiff that her position had been diminished, Ms. Barkanyi assured Plaintiff that her position in the Billing Department's hierarchy had not changed – just the nature of her duties had changed. (Rule 56.1 Statement, ¶ 34).

Plaintiff did not complain to Mr. Chiseri, Mr. Newton, Susan Kalogiannis (the Human Resources/Credentialing Manager of ISS) or anyone else about her dissatisfaction with the change in her job duties, the manner in which she was treated after she returned to work in

---

[2] "Plaintiff Tr." cites to the transcript of the deposition of Plaintiff commenced on March 20, 2008 and continued on April 22, 2008. Relevant excerpts from Plaintiff's deposition transcript are annexed to the accompanying Declaration of Stephanie L. Burns, Esq., dated September 9, 2008 ("Burns Declaration"), in Exhibit "K".

[3] "Barkanyi Tr." cites to the transcript of the deposition of Virginia Barkanyi commenced on June 17, 2008 and continued on July 18, 2008. Relevant excerpts from the transcript of Ms. Barkanyi's deposition are annexed to the accompanying Burns Declaration as Exhibit "L".

December 2005 or about any other terms or conditions of her employment. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 277:20 – 278:13, p. 279:16-24, pp. 360:17 – 361:9, pp. 364:19 – 365:17).

On May 5, 2006, Plaintiff's daughter, Heather DeNardi, left the Billing Department without clocking out. (Rule 56.1 Statement, ¶ 54). Sometime after her departure, Plaintiff clocked her daughter out by entering her daughter's code into the computer time clock program. (Rule 56.1 Statement, ¶ 55). Ms. Barkanyi confronted Plaintiff about clocking out her daughter. (Rule 56.1 Statement, ¶ 56). Subsequently, Ms. Barkanyi informed Mr. Newton that Plaintiff clocked out her daughter and, initially, denied doing so but when pressed admitted to clocking out her daughter. (Rule 56.1 Statement, ¶¶ 57, 58).

On May 8, 2006, Mr. Newton met with Plaintiff and Ms. Barkanyi. (Rule 56.1 Statement, ¶ 62). During this meeting, Plaintiff was informed that her employment was terminated. (*Id.*).

## III.    <u>ARGUMENT</u>

### <u>POINT I</u>

### <u>STANDARD OF REVIEW</u>

#### A.    **The Legal Standard Applicable To Motions For Summary Judgment**

The legal principles employed by a court on summary judgment are well-established. Fed. R. Civ. P. 56 states that summary judgment shall be granted:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Thus, summary judgment must be granted where the non-moving party fails to establish the existence of an element that is essential to that party's case. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). "In such a situation, there can

be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23, 106 S.Ct. at 2552.

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrates absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the movant satisfies this burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

The court must view inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2516. The non-moving party cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment" (*Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570 (1987)) and "must do more than simply show that there is some metaphysical doubt as to the material facts" (*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)). Rather, Plaintiff must set forth "specific facts showing that there is a genuine issue of fact for trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592 (1968). Hence, to defeat a motion for summary judgment, Plaintiff may not rest upon the pleadings in her Complaint or upon "mere conclusory allegations or denials," but must produce specific facts to establish a genuine issue of material fact for trial. *Blue v. Koren*, 72 F.3d 1075, 1083-84 (2d Cir. 1995); *accord, Sista v. CDC IXIS North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Only facts that might affect the outcome of the suit under governing law are material facts. *See, Anderson*, 477 U.S. at 248,

106 S.Ct. at 2510. Further, there is no genuine issue of material fact unless there is sufficient evidence favoring the non-moving party upon which a reasonable jury could return a verdict for it. *Id.*

Although District Courts are cautious when granting summary judgment in employment discrimination cases because the employer's intent is often at issue, "'the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Stone v. Manhattan and Bronx Surface Transit Operating Auth.*, 539 F.Supp.2d 669, 676 (E.D.N.Y. 2008), *quoting Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91 (1985). To raise a fact issue regarding state of mind, "there must be solid circumstantial evidence to prove plaintiff's case." *Verri v. Nanna*, 972 F.Supp. 773, 783 (S.D.N.Y. 1997). Since Defendants have proffered objectively reasonable and non-discriminatory reasons for their decision to terminate Plaintiff's employment with ISS, Plaintiff must proffer "particularized evidence of direct or circumstantial facts . . . supporting the claim of improper motive." *Blue,* 72 F.3d at 1084. This she cannot do and therefore, summary judgment is appropriate.

**B.    The Legal Standard Applicable To**
**      Plaintiff's Discrimination Claims**

ADA and NYHRL employment discrimination claims are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Sista,* 445 F.3d at 169. This analysis has three (3) steps. First, Plaintiff has the burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802-05, 93 S.Ct. at 1824-25; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-47 (1993); *Sista,* 445 F.3d at 169. To

establish a *prima facie* case under the ADA, a plaintiff must demonstrate that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation and (4) she suffered adverse employment action because of her disability. *Sista*, 445 F.3d at 169.

However, in this action, Plaintiff asserts that she was not disabled and was fully capable of performing all functions of her job. (Compl. ¶¶ 13, 14). Instead, she alleges that the Defendants perceived her to be disabled. (Compl. ¶ 16). To demonstrate a perceived disability under the ADA, Plaintiff "must show not only that the [D]efendants 'regarded her as somehow disabled' but that they 'regarded her as disabled within the meaning of the ADA.'" *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001), *citing Colwell v. Suffolk County Police Dep't*, 158 F.3d 636, 646 (2d Cir. 1998), *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1253 (1999). In other words, Plaintiff must establish Defendants perceived her as substantially limited in her ability to perform a major life activity. *Giordano*, 274 F.3d at 748. An employee can be perceived as disabled in two ways: (1) her employer "mistakenly believes she has a physical impairment that substantially limits one or more life activities, or" (2) her employer "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Giordano*, 274 F.3d at 748. Plaintiff has neither articulated what physical impairment DRA and ISS purportedly believe she has nor articulated what major life activity(s) DRA and ISS purportedly believe has been substantially limited by an impairment.

Despite these omissions, if the Court finds Plaintiff is able to successfully establish a *prima facie* case of discrimination, which Defendants assert is not the case, the burden shifts to the employer to offer evidence of a legitimate, non-discriminatory reason for the challenged

employment decision. *Sista,* 445 F.3d at 169. In this case, Defendants have set forth legitimate, non-discriminatory reasons for Plaintiff's termination – falsifying her daughter's time record and lying about doing so.

Once the employer articulates a legitimate reason for its decision, the presumption of discrimination triggered by the *prima facie* case drops away and the focus turns to Plaintiff's ultimate burden of persuasion -- demonstrating by a preponderance of the evidence that the challenged employment decision was the result of intentional discrimination and the proferred reason merely a pretext. *See, St. Mary's Honor Ctr.,* 509 U.S. at 509-511, 113 S.Ct. at 2448-49; *Sista,* 445 F.3d at 169. Demonstration that a proffered reason is pretextual requires a showing by Plaintiff that the employer's reason is false and that discrimination was the real reason -- merely disbelieving the employer is insufficient. *See, Stone,* 539 F. Supp.2d at 677, *citing, St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 515, 113 S.Ct. at 2742; *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir. 1995). Where the employer has provided a non-discriminatory reason for terminating employment and the "plaintiff has only created a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred" the employer is entitled to summary judgment as a matter of law. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 2109 (2000).

## POINT II

### PLAINTIFF CANNOT ESTABLISH
### A *PRIMA FACIE* CASE THAT SHE WAS
### PERCEIVED TO BE DISABLED BY DEFENDANTS

Plaintiff cannot meet her initial burden of demonstrating a *prima facie* case of disability discrimination. Plaintiff asserts that she was demoted and then fired because Defendants perceived her to be disabled and useless after she returned to work on December 5, 2005. (Compl. ¶¶ 13, 16). As stated above, an employee can be perceived as disabled in two ways: (1) her employer "mistakenly believes she has a physical impairment that substantially limits one or more life activities, or" (2) her employer "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Giordano*, 274 F.3d at 748. Plaintiff has neither articulated what physical impairment DRA and ISS purportedly believe she has nor articulated what major life activity(s) DRA and ISS purportedly believe is substantially limited. These omissions alone compel dismissal of this action. Moreover, Defendants contend Plaintiff cannot establish that there is any causal connection between Plaintiff's alleged, perceived disability and her termination, which is the final element of her *prima facie* case.

Defendants admit Plaintiff was terminated on May 8, 2006; however, they deny this termination was in any way related to any disability Plaintiff may or may not have or may or may not be perceived to have. Plaintiff has not and cannot point to any evidence to suggest that she was perceived to be disabled. She returned to work on December 5, 2005. (Rule 56.1 Statement ¶ 37). Yet, she testified that her duties and responsibilities did not change until in or about March 2006. (Rule 56.1 Statement ¶ 40). This change was to learn how to operate the Cerner Interface and then to take over operating it from Ms. Gustin, another supervisor in the Billing Department of ISS. (Plaintiff Tr. [Burns Dec. Exh. K] pp. 233:21 – 234:11, p. 236:3-11).

Yet, Plaintiff agreed to this change in her job duties and responsibilities. (Rule 56.1 Statement ¶ 46). Moreover, when she was approached by Ms. Barkanyi about taking over the operation of the Cerner Interface, Ms. Barkanyi told Plaintiff she could not do her existing responsibilities and the Cerner Interface. (Rule 56.1 Statement ¶ 45). The Cerner Interface would need to be her whole focus. (Barkanyi Tr. [Burns Dec. Exh. L] p. 197:5-12).

Her new responsibility – operation of the Cerner Interface – is and was then vital to Defendants. (Rule 56.1 Statement ¶ 48). No services performed by DRA can be billed unless and until the information concerning each service passes through the Cerner Interface. (Rule 56.1 Statement ¶ 49). Thus, one hundred percent (100%) of DRA's revenues pass through the interface. (Chiseri Aff. ¶ 31). Since ISS provided billing services to two (2) clients – DRA and HVR – the Cerner Interface accounted for approximately seventy-five percent (75%) of the revenues collected by ISS on behalf of its clients. (Chiseri Aff. ¶¶ 16, 31). Accordingly, responsibility for this interface was far from a menial data entry position. It required someone with Plaintiff's breadth of knowledge concerning the requirements of various insurers for the processing of their claims. (Barkanyi Tr. [Burns Dec. Exh. L] p. 193: 7-19, pp. 194:24 – p. 195:19). Unfortunately, it appears that after agreeing to take over the operation of the Cerner Interface, Plaintiff found it boring to do the same thing day after day. (Rule 56.1 Statement, ¶ 46; Plaintiff Tr. [Burns Dec. Exh. K] p. 246:15-24). Yet, she did not ask Ms. Barkanyi to take her off the interface and reassign her.

Significantly, there was no decrease in Plaintiff's hourly wage after she returned to work. (Rule 56.1 Statement ¶ 12). Plaintiff remained a forty (40) hour per week employee and earned substantial overtime after returning to work on December 5, 2005. (Burns Dec. Exhs. G, J, N). She also continued to earn overtime after she began working on the Cerner Interface. The chart

below indicates the overtime hours earned by Plaintiff per paycheck after her return to work in December 2005:

| Pay Check Date | Total Overtime Hours |
| --- | --- |
| 12/23/05 | 11 |
| 1/6/06 | 8 |
| 1/20/06 | 10.5 |
| 2/3/06 | 9.75 |
| 2/17/06 | 17.75 |
| 3/3/06 | 21.25 |
| 3/17/06 | 6.75 |
| 4/14/06 | 10.25 |
| 4/28/06 | 4.75 |
| 5/12/06 | 2.5 |

(Rule 56.1 Statement ¶ 51).

There is no proof that Plaintiff was regarded as not being capable of performing her job duties. It defies logic that an employee perceived to be incapable of performing her job duties, would be assigned to an interface that accounts for approximately seventy-five (75%) percent of the company's billing services. (Chiseri Aff. ¶ 31). In an effort to manufacture a basis to believe her performance contributed to the decision to terminate her employment, Plaintiff recounts a single, isolated incident in which her immediate superior, Ms. Barkanyi, purportedly asked Plaintiff if her chemotherapy was affecting her brain because she seemed to be forgetful. (Plaintiff Tr. [Burns Dec. Exh. K], p. 196:8-15). Ms. Barkanyi denies making any such comment but even if she did, Plaintiff admits it was made on a single occasion in or about January 2006. (Plaintiff Tr. [Burns Dec. Exh. K], p. 147:15-18). Yet, her job duties did not change until March 2006 and she was not terminated until May of that year. (Rule 56.1 Statement ¶¶ 40, 62).

The only incident involving alleged criticism of Plaintiff's work performance is Ms. Gustin telling Plaintiff that it should not take her more than a day to complete a particular task and then Ms. Barkanyi making a similar comment the next day. (Plaintiff Tr. [Burns Dec. Exh. K], pp. 178:12 – 179:19). Again these comments were made once to Plaintiff. (Plaintiff Tr. [Burns Dec. K], p. 266:3-14). Yet, the Second Circuit has held "stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.), *cert denied*, 534 U.S. 993, 122 S.Ct. 460 (2001). One comment that her work should be completed in a more timely manner can hardly be considered a "stray" remark as it has noting to with any disability Plaintiff may have or may be perceived to have. Further, Ms. Barkanyi and Ms. Gustin are not the decision-makers in this instance; rather, Mr. Newton was the one who terminated Plaintiff. (Rule 56.1 Statement, ¶ 61).

Furthermore, Plaintiff does not contend that Mr. Chiseri or Mr. Newton ever commented or took any action to indicate they believed Plaintiff was disabled or in any way limited in her ability to perform her job functions. (Plaintiff Tr. [Burns Dec. Exh. K], pp. 277:20 – 279:25). Furthermore, she did not complain to them (as Ms. Barkanyi's superiors) or the Human Resources/Credentialing Manager of ISS, Susan Kalogiannis, about her dissatisfaction with the change in her job duties, the manner in which she was treated after she returned to work in December 2005 or about any other terms or conditions of her employment. (Plaintiff Tr. [Burns Dec. Exh. K], pp. 277:20 – 278:13, p. 279:16-24, pp. 360:17 – 361:9, pp. 364:19 – 365:17).

Cases in this Circuit with even more compelling facts of disability discrimination have been dismissed on summary judgment grounds. In *Giordano v. The City of New York, supra*, a former New York City police officer brought an action under the ADA alleging termination

based upon a perceived disability. While employed by the NYPD, the officer was required to take an anticoagulant (blood thinner) for the remainder of his life. *Giordano*, 274 F.3d at 744. The NYPD determined that based upon the officer's need to take the medication, he could not perform full duty patrol work for which he was separated from employment. *Giordano*, 274 F.3d at 745.

The Second Circuit held that even though the NYPD terminated the officer's employment because it had no position to which it could assign him, it did not mean that the defendants regarded him "as disabled from a 'broad class of jobs' compared to 'the average person having comparable training, skills and abilities'. *Giordano*, 274 F.3d at 749, *citing Bardell v. New York State Bd. of Law Examiners*, 226 F.3d 69, 82 (2d Cir. 2000). The court found that there was simply no evidence in the record that suggested that the defendant's "perceived" Giordano as unable to work in a 'broad class of jobs.' *Giordano*, 274 F.3d at 750.

*Tubens v. Police Dep't of City of New York*, 48 F.Supp. 2d 412 (S.D.N.Y. 1999) is instructive. In *Tubens*, the plaintiff, a police officer with a heart condition, was determined by physicians to be unable to perform the physical activities of police work, and therefore, was dismissed from duty. Claiming a violation of the ADA based upon a perceived disability, the police officer commenced a civil action against the NYPD. After reviewing applicable Second Circuit caselaw, the District Court held that plaintiff failed to provide any evidence supporting even an inference that the NYPD perceived her heart condition as rendering her incapable of performing a class of jobs on a broad range of jobs suitable for a person of her age, experience and training. *Tubens*, 48 F.Supp. 2d at 419. Moreover, while the police officer was correct in her presentation that the NYPD determined that she needed to avoid certain physical exertion. She was unable to establish that she was disabled within the meaning of the ADA since she

could not establish that her inability to perform certain types of work constituted "neither a 'class of jobs' nor a 'broad range of jobs in various classes." *Tubens*, 48 F.Supp. 2d at 418.

There is absolutely no evidence to suggest that Defendants perceived Plaintiff as unable to perform any work at all. In fact, the overwhelming evidence supports a contrary finding. When Plaintiff returned from her disability leave, she worked in the identical position she held prior to taking her disability leave. (Rule 56.1 Statement, ¶¶ 10, 34, 40). In fact, the undisputed testimony from Plaintiff herself, confirms that when she returned to work she performed the same tasks as she had performed before she went on disability leave (Rule 56.1 Statement, ¶ 40). She continued to do so for the following three (3) months. (*Id.*). In fact, the undisputed evidence confirms that she continued to work overtime virtually each and every pay period. (Rule 56.1 Statement, ¶ 51). Moreover, when her position was changed, it was based upon Defendants' need to fill a critical position and more importantly, it was changed with her acceptance of the new position. (Rule 56.1 Statement, ¶¶ 44, 46, 48, 49).

Simply put, Plaintiff has not and cannot make any showing that Defendants "perceived" her to be disabled within the meaning of the ADA. Admittedly, Plaintiff had no limitations (she was cancer free) (Compl. ¶ 13; Rule 56.1 Statement, ¶ 39) and Defendants placed no limitations on her ability to work. Accordingly, Plaintiff cannot satisfy her burden of proof.

## POINT III

### DEFENDANTS HAD LEGITIMATE,
### NON-DISCRIMINATORY REASONS FOR
### TERMINATING PLAINTIFF'S EMPLOYMENT

Even if the Court finds Plaintiff can somehow meet her initial burden of establishing a *prima facie* case of disability discrimination, Defendants clearly had legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Each employee of ISS has been instructed to only clock themselves in and out using its computerized time clock program and to keep his/her individualized, assigned code for doing so confidential. (Rule 56.1 Statement ¶¶ 52, 53). It is undisputed that Plaintiff, a supervisor in the Billing Department, clocked out her daughter sometime after her daughter had left the offices of ISS on May 5, 2008. (Rule 56.1 Statement ¶¶ 10, 34, 55). It is also undisputed that Mr. Newton, who made the decision to terminate Plaintiff, did so believing Plaintiff initially lied to her direct supervisor, Ms. Barkanyi, about clocking out her daughter. (Rule 56.1 Statement ¶¶ 60, 61, 63). Plaintiff denies that she lied to Ms. Barkanyi. However, it is undisputed that Ms. Barkanyi told Mr. Newton that Plaintiff lied to her. (Rule 56.1 Statement ¶ 58). Moreover, Mr. Newton memorialized his basis for terminating Plaintiff in an email he sent to his superiors within an hour of informing Plaintiff that her employment was terminated. (Rule 56.1 Statement ¶ 63).

It is undisputed that Mr. Newton made the decision to terminate Plaintiff. (Rule 56.1 Statement, ¶ 61). Yet, Plaintiff has not come forward with any evidence that Mr. Newton was in anyway motivated by any discriminatory motive. Plaintiff has not attributed any comments, remarks or actions to Mr. Newton that suggest he considered her disabled. Plaintiff simply asserts that sometime after she returned to work in December 2005, Mr. Newton stopped

greeting her and chatting with her when he would pass by her desk. (Plaintiff Tr. [Burns Dec. Exh. K] p. 183:5-16).

Thus, Defendants have articulated clear and specific, legitimate, non-discriminatory reasons for terminating Plaintiff's employment. To avoid summary judgment, Plaintiff must tender evidence, not mere conjecture or speculation, that she was terminated because she was perceived to have a disability that substantially limited a major life function. *See St. Mary's Honor Ctr.*, 500 U.S. at 509-11, 113 S.Ct. at 2448-49; *Sista,* 445 F.3d at 169. Defendants submit this is a burden that Plaintiff cannot meet.

## POINT IV

### PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE AGAINST DRA – DRA WAS NOT HER EMPLOYER

In the ADA, "employer" is simply defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, ...." 42 U.S.C. § 12111(5)(A). Civil rights laws, including the ADA, extend the term "employer" beyond the entity that pays an individual his or her paycheck. *United States v. New York State Dep't of Motor Vehicles*, 82 F.Supp.2d 42, 46 (E.D.N.Y. 2000). If an entity meets the statutory definition and exerts significant control over an individual's access to or terms and conditions of employment with a third party, that entity can be considered an "employer" even if it is not the one to pay the individual. *Id.* at 47. Although in 2006, DRA had sufficient employees to fall within the statutory definition of an "employer", it denies it exerted any control over the terms and conditions of Plaintiff's employment or her access to employment.

Plaintiff was employed by ISS not DRA.  Plaintiff alleges she was hired by DRA and/or ISS in or about September 1999 and was terminated in May 2006.  (Compl. ¶ 4).  During this period of time, ISS issued pay checks and W-2 Forms to Plaintiff – not DRA.  (Rule 56.1 Statement ¶¶ 13-15).  Plaintiff was hired by Nancy Rasmussen, who was the Director of Operations of ISS, to work as an insurance representative in the Billing Department of ISS. (Rule 56.1 Statement ¶¶ 5-7).  Throughout her employment, the Billing Department was managed by employees of ISS – Ms. Rasmussen, Gail Platt and Ms. Barkanyi.  (Rule 56.1 Statement ¶¶ 7-9, 29).  There is no evidence that anyone other than these supervisors assigned the tasks that Plaintiff would perform or set the hours Plaintiff would work.

ISS and DRA are and were, at all times relevant to this action, separate and independent business entities.  (Rule 56.1 Statement ¶¶ 16-20).  DRA is a professional corporation that was incorporated in 1989.  (Rule 56.1 Statement ¶¶ 16, 20).  ISS is a limited liability company that was formed in or about July 1996 pursuant to the laws of New York State.  (Rule 56.1 Statement ¶ 17; Chiseri Aff. Exh. A).  At its inception, ISS had two members DRA and Vassar Brothers Hospital.  (Rule 56.1 Statement ¶ 18).  In exchange for compensation, ISS provided billing services to DRA pursuant to a written Management and Resources Agreement from in or about July 1996 to in or about December 1996.  (Rule 56.1 Statement, ¶¶ 19, 20; Chiseri Aff. ¶ 9, Exh. F).

Mark Newton, Chief Financial Officer of DRA, in consultation with Virginia Barkanyi, Director of the Billing Department of ISS, made the decision to terminate Plaintiff's employment.  (Rule 56.1 Statement ¶¶ 59-62).  Yet, Mr. Newton did so acting on behalf of ISS not DRA.  (Chiseri Aff. ¶¶ 12, 14, 15, Exh. G).  Mr. Newton was initially hired by ISS to serve

as its CFO. (Rule 56.1 Statement ¶ 21). In 2004, his employment contract was assigned from ISS to DRA but the agreement effectuating this assignment contained the following provision:

> Newton, Chiseri, ISS and DRA agree that ISS shall receive personal services of Newton and Chiseri from DRA. The personal services shall be provided for a period coterminous with the Management and Resource Agreement between DRA and ISS unless either ISS or DRA gives written notice to the other party to terminate this personal services agreement earlier.

(Rule 56.1 Statement, ¶ 22; Chiseri Aff. ¶ 12, Exh. G). In accord with this provision, after the assignment of his employment agreement, Mr. Newton continued, *inter alia*, to hire, fire and discipline ISS personnel in the Billing Departments. (Rule 56.1 Statement ¶¶ 25, 26).

During Plaintiff's tenure at ISS, employees of its Billing Department billed patients and/or their respective insurance companies for services performed by DRA and Hudson Valley Radiologists, P.C. ("HVR"). (Chiseri Aff. ¶ 16, Exh. F). In interacting with the patients and/or their insurance companies, ISS employees would identify the company on whose behalf they were calling – DRA or HVR – because ISS was not know to these individuals or entities. *(Id.)*. This perhaps accounts for Plaintiff's confusion as to the entity for whom she worked. Plaintiff was employed by ISS but, due to ISS's contract with DRA – the MRA, through ISS, Plaintiff provided billing services to DRA and interacted with DRA's patients. (Chiseri Aff. ¶ 16, Exh. F).

### POINT V

### PLAINTIFF'S NYHRL CLAIM SHOULD BE DISMISSED

Although NYHRL has a broader definition of disability – it does not require the disability to substantially impact a major life function, Plaintiff's claim still fails. *Reeves v. Johnson Controls World Service, Inc.*, 140 F.3d 144, 154-156 (2d Cir. 1998). The same three part burden shifting analysis is used to analyze claims under NYHRL as is used to analyze claims under the

ADA. *See Jordan v. Bates Advertising Holdings, Inc.,* 46 A.D.3d 440, 442, 848 N.Y.S.2d 127, 129 (1st Dep't 2007). Thus, since Plaintiff cannot show that her termination was caused by any disability real or perceived and Defendants have a legitimate, non-discriminatory reason for Plaintiff's termination, her NYHRL claim(s) also fail and must be dismissed. *See, e.g., Jordan,* 46 A.D.3d at 442-443, 848 N.Y.S.2d at 129-30. Moreover, if the Court dismisses Plaintiff's ADA claims then the Court has no jurisdiction to preside over her NYHRL claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995).

## IV.    CONCLUSION

For the reasons set forth above, Defendants DRA Imaging, P.C. and Imagining Support Services, LLC respectfully request that the Court enter an Order, pursuant to Fed. R. Civ. P. 56, granting summary judgment, dismissing the Complaint in its entirety, or alternatively, at a minimum, dismissing Defendant DRA Imaging, P.C. from this action and awarding Defendants such other and further relief as the Court may deem just and proper.

Dated:    White Plains, New York
          September 10, 2008

                          **KEANE & BEANE, P.C.**

               By:    _Stephanie Burns_____
                          Stephanie L. Burns (SB 3467)
                          Lance H. Klein (LK 8243)
                          Attorneys for Defendants
                          445 Hamilton Avenue, 15th Floor
                          White Plains, New York  10601
                          (914) 946-4777