UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

NANCY DENARDI,

           Plaintiff,

      -against-

DRA IMAGING, P.C. and IMAGING SUPPORT
SERVICES, LLC,

          Defendants.

------------------------------------------------------X

**AFFIDAVIT IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMUARY JUDGMENT**

07 CIV. 5794 (MGC)

STATE OF NEW YORK    )
                   ) ss.:
COUNTY OF DUTCHESS  )

      **JOSEPH CHISERI**, being duly sworn, deposes and says:

      1. I am the Chief Administrative Officer for Defendant DRA Imaging, P.C. ("DRA"),
which at times relevant to this action was a member of Defendant Imaging Support Services,
LLC ("ISS"). I am fully familiar with the facts and circumstances relating to this action and
make this Affidavit based on my personal knowledge and review of the documents and business
records of DRA and ISS.

      2. This Affidavit is made in support of the motion seeking summary judgment pursuant
to Federal Rule of Civil Procedure 56 in regard to Plaintiff Nancy DeNardi's ("Plaintiff")
Complaint against ISS and DRA.

      3. Initially, in or about June 2000, I was hired by ISS to serve as its Chief
Administrative Officer.

      4. ISS is a limited liability company that was formed by Dutchess Radiology Associates,
P.C. and Vassar Brothers Hospital in or about July 1996. Relevant excerpts from the redacted,
bates stamped copy of the Operating Agreement produced in this action, are annexed hereto in
Exhibit "A".

5.  Dutchess Radiology Associates, P.C. was a professional corporation formed in or about November 1989. Its Certificate of Incorporation, as bates stamped for production in this action, is annexed hereto as Exhibit "B".

6.  In or about March 12, 1998, Dutchess Radiology Associates, P.C. changed its name to DRA Imaging P.C. ("DRA"). The Certificate of Amendment of the Certificate of Incorporation of Dutchess Radiology Associates, P.C. memorializing this name change, as bates stamped for production in this action, is annexed hereto as Exhibit "C".

7.  On or about December 31, 1999, an Amended and Restated Operating Agreement for ISS was executed. Relevant excerpts from the redacted, bates stamped copy of the Amended and Restated Operating Agreement produced in this action, are annexed hereto in Exhibit "D". In the Amended and Restated Operating Agreement, the members of ISS are designated as "Vassar" and the "Radiologists". "Vassar" remains defined as Vassar Brothers Hospital but the "Radiologists" are now defined as DRA Imaging, P.C. (rather than as Dutchess Radiology Associates, P.C, which was the definition in the original Operating Agreement). (*Compare* the Operating Agreement ¶¶ 1.24, 1.29, 3.1 [Exh. A hereto] and the Amended and Restated Operating Agreement ¶¶ 1.25, 1.30, 3.1 [Exh. D hereto]).

8.  The Amended and Restated Operating Agreement was again amended by an agreement between Vassar Brothers Hospital, DRA and Hudson Valley Radiologists, P.C. ("HVR"), dated September 30, 2002. A redacted copy of this agreement, as bates stamped for production in this action, is annexed hereto as Exhibit "E".

9.  At or about the time ISS was formed, ISS and Dutchess Radiology Associates, P.C. (later known as DRA) entered into a Management and Resources Agreement ("MRA") through which ISS became the exclusive provider of certain administrative services to Dutchess

Radiology Associates, P.C. later known as DRA in a specified geographical area. Relevant excerpts from the redacted, bates stamped copy of the MRA produced in this action are annexed hereto in Exhibit "F". The services provided by ISS to Dutchess Radiology Associates, P.C. (later known as DRA) included but were not limited to management services, billing services, transcription services and leasing of equipment and/or real estate. (*See* MRA ¶¶ 5-7 [Exh. F hereto]). ISS was compensated for these services at the fees and rates set forth in the MRA. (*See* MRA ¶ 8 [Exh. F hereto]).

10.    In or about July 1996, when the MRA went into effect, all non-medical employees of DRA, such as employees in management services, accounting services, billing services and transcription services, were transferred from DRA to ISS.

11.    As a result, during the term of the MRA, in or about July 1996 to November 1, 2006, Dutchess Radiology Associates (later known as DRA) only employed doctors, physician assistants, nurses and radiological technicians. All other personnel were employed by ISS pursuant to the MRA, with two (2) exceptions that became effective on March 31, 2004.

12.    Effective March 31, 2004, the employment agreement between myself and ISS as well as the employment agreement between Mark Newton and ISS were assigned to DRA by ISS. A copy of the agreement assigning these employment agreements to DRA (the "Assignment Agreement") is annexed hereto as Exhibit "G". However, the Assignment Agreement makes clear that both Mr. Newton and I were still obligated to provide services to ISS during the effective period of the MRA.

13.    Prior to the assignment of our employment agreements to DRA, Mr. Newton and I were the Chief Financial Officer ("CFO") and the Chief Administrative Officer ("CAO") of ISS, respectively. Following the assignment, we became the CFO and CAO of DRA.

14.     After the Assignment, during the times relevant to this action, Mr. Newton and I continued to supervise the employees and day-to-day operations of ISS on behalf of ISS as intended by the terms of the Assignment Agreement.   Our supervision of ISS employees included but was not limited to hiring, firing and disciplining them.

15.     Thus, when Mr. Newton terminated Plaintiff, he did so pursuant to his obligation to provide services to ISS, not on behalf of DRA.

16.     During the period of Plaintiff's employment, ISS only serviced two clients – DRA pursuant to the MRA and HVR pursuant to a separate agreement.   Thus, when contacting patients, insurance companies and other vendors for DRA and HVR, ISS employees would identify themselves with respect to the client being serviced (DRA or HVR) not ISS because ISS was not known to the patients, insurance companies or other vendors.

17.     After the term of the MRA had expired, on or about November 1, 2006, all ISS employees were transferred to DRA and its payroll.

18.     In 1990, Virginia Barkanyi was hired by Dutchess Radiology Associates, P.C. as an independent contractor to work in its Accounting Department.   On or about January 14, 1992, Ms. Barkanyi became a part-time employee of Dutchess Radiology Associates, P.C. to work as an accountant and on other projects as needed.   She eventually became an insurance representative in its Billing Department.   In 1998, Ms. Barkanyi became a full-time employee of ISS.  Sometime thereafter, she became the Assistant Manager of the Billing Department of ISS.  In or about June 2004, Ms. Barkanyi became the Billing Director of ISS.  She continued in this position until all ISS employees were transferred to DRA effective November 1, 2006 when she became the Billing Director of DRA.  A position she still holds today.

19.     In July 1994, Carol Gustin was hired as an insurance representative in the Billing Department of Dutchess Radiology Associates, P.C. In or about July 1996, Ms. Gustin became an employee of ISS when ISS took over billing responsibilities for Dutchess Radiology Associates, P.C. In August 1997, Ms. Gustin became the clerical manager of ISS. She continued in this position until August 28, 1998, when she voluntarily terminated her employment by ISS. In April 2000, Ms. Gustin returned to ISS as an employee in the Billing Department and remained such until all ISS employees were transferred to DRA effective November 1, 2006. To date, she remains a DRA employee.

20.     In January 1997, Susan Kalogiannis was hired by ISS to work as an insurance representative in its Billing Department. In June 1998, she became the administrative assistant to Kim Mayhew, then-Executive Director of ISS, and Nancy Rasmussen, then-Director of Operations of ISS. In September 2000, Ms. Kalogiannis became the Human Resource/Credentialing Manager of ISS. A position she continued to hold until November 1, 2006 when she became the Human Resource/Credentialing Manager of DRA. A position she still holds today.

21.     In September 1999, Gail Platt was an employee of ISS who worked in its Billing Department. She left ISS in or about February 2004.

22.     Plaintiff was hired on or about September 7, 1999 by ISS. The decision to hire Plaintiff was made by Nancy Rasmussen, who was then the Director of Operations of ISS.

23.     On or about August 1, 2001, ISS hired Jacqueline Bourne to work in the Billing Department. Ms. Bourne remained employed by ISS until all ISS employees were transferred to DRA effective November 1, 2006. To date, she remains a DRA employee.

24.     In or about September 2004, ISS hired Heather DeNardi, Plaintiff's daughter, to work part-time in its Billing Department.

25.     On or about March 27, 2006, ISS hired Shari McCauley to be a supervisor in the Billing Department. Ms. McCauley remained employed by ISS until all ISS employees were transferred to DRA effective November 1, 2006. To date, she remains a DRA employee.

26.     In or about September 2002, ISS started using a computerized time clock system. For this system, each employee was given a code that had to be entered into the program. Employees were instructed to keep their time clock codes confidential and not clock in or out any other employees.

27.     In fact, Plaintiff agreed to keep her time clock code and all computer passwords she was assigned confidential in a Security and Confidentiality Agreement she signed on April 1, 2003, which is annexed hereto, as bates stamped for production in this action, in Exhibit "H". In this agreement, Plaintiff explicitly agreed not to "log on to any of the Company's computer systems that currently exist or may exist in the future using a password other than my own."

28.     Payroll checks were issued to Plaintiff from on or about September 24, 1999 to May 26, 2006 by ISS. ISS issued W-2 forms to Plaintiff for tax years 1999, 2000, 2001, 2002, 2003, 2004, 2005 and 2006. Copies of these W-2 forms, with exception of the 1999 W-2, are annexed hereto in Exhibit "I". An excerpt of a payroll report from ADP for ISS for pay date December 30, 1999, which is annexed hereto as Exhibit "J" lists Plaintiff and provides her earnings for that pay date as well as quarterly and year to date earnings.

29.     No payroll checks have been issued by DRA to Plaintiff. No W-2 Forms or 1099 Forms have been issued to Plaintiff by DRA.

30.    Our electronic payroll system indicates, Plaintiff worked the following overtime hours after she returned to work in December 2005:

| Pay Check Date | Total Overtime Hours |
|---|---|
| 12/23/05 | 11 |
| 1/6/06 | 8 |
| 1/20/06 | 10.5 |
| 2/3/06 | 9.75 |
| 2/17/06 | 17.75 |
| 3/3/06 | 21.25 |
| 3/17/06 | 6.75 |
| 4/14/06 | 10.25 |
| 4/28/06 | 4.75 |
| 5/12/06 | 2.5 |

31.    The Cerner Interface in the Billing Department is critical. One hundred percent (100%) of the revenue earned by DRA is processed through this interface. Accordingly, approximately seventy-five (75%) percent of the billing services provided by ISS were processed through this interface.

32.    On May 8, 2006, I received an email from Mr. Newton stating:

FYI. Nancy DeNardi and Heather DeNardi were terminated today. Nancy punched out her daughter Heather on Friday well after Heather left. Ginny picked up on it, and when she questioned Nancy, Nancy lied to her. Only when Ginny pushed her with the facts, did Nancy later admit the lie. Nancy had a supervisory role in the billing dept. Ginny needs to trust her employees and especially her deputies. Ginny and I discussed it Friday, then agreed to sleep on it over the weekend. Joe and I discussed it today also. The severe consequence of termination was based on the lying even more than the stealing. Sorry for unwelcome news.

A copy of the email I received, as bates stamped for production in this action, is annexed hereto as Exhibit "K". This email was also addressed to Dr. Victor Gaines and Dr. Russ Karp. Dr.

Gaines is and was at that time the Chief Executive Officer of DRA. Dr. Karp was DRA's liaison to the Billing Department of ISS.

**WHEREFORE,** for the reasons set forth in this Affidavit and in the other documentation submitted in support of the Motion for Summary Judgment, the Court should grant the motion for summary judgment and dismiss Plaintiff's Complaint in its entirety or alternatively, at a minimum, dismiss Defendant DRA Imaging, P.C. from this action.

_____
JOSEPH CHISERI

Sworn to before me this
_10_ day of September, 2008

_____
Notary Public

SUSAN KALOGIANNIS
Notary Public, State of New York
No. 01KA6040547
Qualified in Ulster County
Commission Expires April 24, 20 _10_

| EXHIBITS TO CHISERI AFFIDAVIT | |
|---|---|
| **EXHIBIT** | **DESCRIPTION** |
| A | Relevant excerpts from the redacted, bates stamped copy of the Operating Agreement for Imaging Support Services, LLC [pages 1-8, 15, 19, 22 (2283-2290, 2297, 2301, 2304)] |
| B | Certificate of Incorporation of Dutchess Radiology Associates PC (bates 434-437) |
| C | Certificate of Amendment of Certificate of Incorporation Dutchess Radiology Associates PC (bates 440-442) |
| D | Relevant excerpts from the redacted, bates stamped copy of the Amended and Restated Operating Agreement for Imaging Support Services, LLC [pages 2305-2312, 2318-2319, 2324, 2327] |
| E | Agreement between Vassar Brothers Hospital, DRA Imaging, P.C. and Hudson Valley Radiologists, P.C., dated September 30, 2002 (bates 2328-2336) |
| F | Relevant excerpts from the redacted, bates stamped copy of the 1996 Management and Resource Agreement [pages 1-12, 18-19 (2339-2350, 2356-2357)] |
| G | Agreement to Assign Certain Employment Agreements and for Personal Services (bates 2358) |
| H | Security and Confidentiality Agreement (bates 175) |
| I | W-2 Forms issued to DeNardi 2000-2006 (bates 222-228) |
| J | ADP payroll sheet (bates 229) |
| K | Email sent by Mark Newton to Victor Gaines, Russ Karp and Joseph Chiseri dated May 8, 2008 (bates 304) |
| | |
| | |
| | |
| | |