**EXHIBIT F**

EXECUTION COPY					THIS AGREEMENT SUPERCEDES THE
									PREVIOUS AGREEMENT EXECUTED BY
									THE PARTIES ON JULY 26, 1996.

MANAGEMENT AND RESOURCES AGREEMENT

AGREEMENT made this 26th day of July, 1996, effective June 1, 1996, by and between Imaging Support Services, LLC, a limited liability company duly organized and existing under the laws of the State of New York, having its principal place of business at 191 Delafield Street, Poughkeepsie, New York 12601 (the "Manager") and Dutchess Radiology Associates, P.C., a New York professional services corporation located at 191 Delafield Street, Poughkeepsie, New York 12601 ("Provider").

WHEREAS, Provider is the operator of a professional radiology practice which provides Radiological services at the following locations:

| Location | Radiological Services |
|---|---|
| 191 Delafield Street, Poughkeepsie, New York | MRI and CT Scan, |
| West Cedar Street, Poughkeepsie, New York | X-Ray and Ultra Sound Mammography |
| Mobile Van | Mammography |

WHEREAS, Provider is a New York professional services corporation rendering professional radiology services through employees and independent contractors who are duly licensed to practice medicine in the State of New York; and

WHEREAS, Manager is a New York limited liability company in the business of providing management, administration, and other services, facilities and equipment to persons and entities engaged in the private practice of medicine; and

1

WHEREAS, Provider and Manager desire to enter into an agreement under which Manager will make available managerial, administrative and other services relating to the non-professional aspects of the Provider's radiology practice and will lease all facilities and equipment required by Provider in connection with such radiology practice.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, covenants and agreements contained herein, the parties agree and contract as follows:

1. <u>Definitions</u>. In this Agreement, the following terms shall have the meanings set forth below:

    a. "Agreement" means this Agreement by and among the parties hereto as such agreement may be amended, modified or supplemented from time to time.

    b. "Contract Year" means a period of twelve (12) months beginning with the Effective Date and each twelve (12) month period thereafter until this Agreement is terminated; provided, however, if this Agreement is terminated prior to the end of the stated Term as provided herein, the last Contract Year shall be a period running from the end of the immediately preceding Contract Year to the end of the Term.

    c. "Effective Date" means the effective date of this Agreement, which is June 1, 1996.

    d. "Operating Agreement" means the operating agreement between the Provider and Vassar Brothers Hospital dated June 1, 1996.

    e. "Provider Locations" means all locations of Provider's Radiology practice which are now or hereafter become subject to the terms of this Agreement.

    f. "Radiology" and "Radiological Services" means all forms of medical imaging, including without limitation by means of Roentgen rays and Radioisotopes, ultra-sonography, CT scanning and magnetic resonance imaging, as used from time to time by the Corporation for diagnostic and therapeutic purposes or otherwise,

2340

and whether or not such medical imaging is employed in other specialties of medicine.

In addition to the terms defined in this Article, other terms defined elsewhere in this Agreement shall have the meanings set forth therein.

2. <u>Relationship of the Parties</u>.

a. <u>Independent Contracting Parties</u>. Manager and Provider are independent contracting parties and the relationship between them is that of Provider and an independent supplier of non-medical services. Nothing in this Agreement shall be construed to create a principal-agent, employer-employee or master-servant relationship. Provider, at all times, shall be solely responsible for all salaries and other remuneration and the payment of all applicable federal, state or local withholding or similar taxes and provision or workers' compensation and disability insurance for any person employed by it. Manager, at all times, shall be solely responsible for all salaries and other remuneration and the payment of all applicable federal, state or local withholding or similar taxes and provision of workers' compensation and disability insurance for any person employed by it.

b. <u>Physician-Patient Relationship</u>. Provider shall have complete responsibility for its practice and its employees, who provide services to Provider's patients. Manager shall not interfere with the exercise by Provider or its employees of their professional judgment, nor shall Manager interfere with, control, direct or supervise Provider or any of Provider's employees in connection with the provision of medical services. In this regard:

  i. Provider shall be solely responsible for the provision of medical care and treatment to its patients;

  ii. Manager shall supervise and direct the non-professional components of the Provider's daily operations only and in no event shall Manager have any responsibility for the care or treatment of Provider's patients;

        iii.      At no time shall Manager interfere with or attempt to interfere with Provider's right to determine the manner in which particular professional services shall be rendered; and

        iv.      Provider shall be solely responsible for determining which individuals utilize the services of Provider and its professionals.

    c.    <u>Restrictions on Names</u>. Provider shall not use any of the following words, or words similar thereto, to describe, advertise or promote its practice or any service rendered by Provider therein: "Facility," "Institution," "Clinic" or "Center."

3.    <u>Insurance</u>.

    a.

    b.

4.    <u>Term</u>. The term of this Agreement shall be for ten (10) years commencing on the Effective Date, unless terminated earlier as provided herein (the "Term").

4

2342

5. <u>Services.</u>  Provider hereby delegates to Manager the authority to do any and all actions reasonably necessary, advisable or proper to conduct and manage the non-professional aspects of its radiology practice at the Provider Locations. The parties acknowledge that Provider's engagement of the Manager is intended to be exclusive, in that during the Term, Provider shall obtain the "Management Services", "Billing Services" and "Transcriptionist Services" described herein only from Manager, and not directly or indirectly from any third party without the express written consent of Manager.

a.  <u>Management Services</u>.  The Manager shall provide to the Provider the following services during the Term hereof with respect to the Provider Locations (the "Management Services"):

(i) employ or engage a qualified individual or individuals to act as on-site manager of the Provider Locations and such other personnel as the Manager deems necessary for adequate non-professional staffing, including all receptionists and clerical personnel, but excluding physicians and radiology technicians and nurses.

(ii) Manage day to day operations;

(iii) Have the right, but not the obligation, to retain accountants and attorneys on behalf of Provider;

(iv) Institute, subject to Provider's approval, all necessary accounting controls and rules and regulations for personnel management, including vacations, personnel disputes, terminations and hiring techniques;

(v) Maintain for Provider accounting books and records pertaining to day to day operations and make available to Provider financial statements showing the results of operations on a monthly basis;

(vi) Accept, draft, and endorse any checks for deposit in the Provider's bank account on behalf of Provider as may be necessary for the normal operation of Provider's business;

(vii) Develop a system of record keeping and maintain records on behalf of Provider, including files containing patient charts and records;

(viii) Develop and maintain an appointments system on behalf of Provider;

(ix) Provide general financial management and business administration services, including compensation of agents, employees and independent contractors;

(x) Provide mail and routine services deemed necessary by Manager for administrative support of the Provider's practice;

(xi) Purchase, lease or otherwise maintain (including all required repairs and replacements) an adequate inventory of medical and other equipment, products and supplies to meet the needs of the Provider in connection with the Provider Locations;

(xii) Assist in the recruitment of professional personnel by Provider, including assisting in the negotiation of contracts;

(xiii) Provide marketing support as the Manager deems advisable from time to time, including advertising, promotion, production of information brochures and information services; and identify and negotiate proposed managed care contracts and other arrangements with preferred provider organizations, health maintenance organizations and other third party payors with the consent of Provider, not to be unreasonably withheld or delayed;

(ix) Arrange for, at Provider's expense, office maintenance and janitorial services.

b. <u>Billing Services</u>.  The Manager shall provide to the Provider the following services during the Term hereof with respect to the Provider Locations (the "Billing Services"):

(i) Prepare and mail all patient insurance forms and "self pay" statements (defined herein as "Bills") with respect to the services rendered by the Provider at the Provider Locations promptly after receipt of patient charge demographic and insurance data, with such billing to be done in Provider's name using Provider's provider number; and deposit such funds in the bank account described herein;

(ii) Implement charge and patient demographic and insurance data recovery systems, using appropriate forms to detail charge and patient registration data necessary for proper billing and collection;

(iii) Evaluate the patient services described on the Provider's records to ascertain appropriate billable and non-billable clinical services rendered by the Provider, and complete charge tickets with respect thereto.  These activities are defined as coding;

(iv) Process all coded charge tickets;

(v) Contact as necessary the Provider's patients or their reimbursing agents to obtain information necessary for Manager to perform under this Agreement;

(vi) In the event that Bills are not satisfied promptly, after statements and supplementary statements are sent to patients or the appropriate reimbursing agents, contact the patient or appropriate reimbursing agents to maximize collections.

7

2345

(vii) With regard to any delinquent accounts, forward such account to a collection agency or agencies if not paid within an appropriate period of time; the Manager is hereby authorized, but is not required, to from time to time engage attorneys or other third parties to collect unpaid receivables;

(viii) Process payments received such that all payments are promptly deposited;

(ix) Promptly post all payments to applicable patient accounts;

(x) Keep and maintain accurate books and records pertaining to billing and cash collections;

(xi) Handle all telephone inquiries and written correspondence pertaining to the Provider's patients in a timely manner;

(xii) On a monthly basis, prepare and render to Provider computer generated management information reports, which reports shall include the following:

(1) Total monthly and year-to-date gross charges generated by the Provider;

(2) Monthly payment and year-to-date payment summary delineated as to patient financial class that includes Medicare, Blue Shield, Medicaid, Commercial, HMO and Self-Pay categories for the Provider;

(3) Number and dollar amount of contractual allowances and courtesy allowances for the Provider;

(4) Aging of patient accounts receivable, delineated by payor and aging class: 0-30 days, 31-60 days, 61-90 days, 91-120 days and over 120 days outstanding for the Provider;

2346

    (5)    Monthly and year-to-date number and dollar amount of accounts to be sent to the collection agency for the Provider;

    (6)    Number and dollar amount of patient account bad debt write offs;

    (7)    Track cash, adjustments and bad debt against monthly cycle in which billed (i.e., Billing Office Control Report).

c.    <u>Transcriptionist Services</u>. The Manager shall provide to the Provider medical record transcription services required by Provider during the Term hereof with respect to the Provider Locations (the "Transcriptionist Services")

d.    Notwithstanding the foregoing, Manager shall <u>not</u> provide or otherwise engage in services or activities which constitute the practice of medicine as defined by New York law. All payments by patients for medical services rendered by Provider shall be payable to Provider. In addition, the availability and utilization of the Services shall in all events be limited as follows:

(i)    All medical charts, records and vital records pertaining to Provider's inactive and/or active patients shall be created and maintained by and under the control of Provider, notwithstanding that any such records may be stored by Manager while separately identified as belonging to Provider;

(ii)    All bills rendered on behalf of Provider by Manager shall be on Provider's letterhead and shall be restricted to professional services rendered by Provider or its employees. Provider shall be responsible for determining charges and fees for their professional services; however, Provider covenants that its charges for services shall be consistent with the usual and customary charges for such services and any amendment of the Provider's fee schedule will be limited such that the

2347

aggregate percentage increase in any given Contract Year shall be no more than the percentage increase (expressed in decimal form) over the course of the immediately preceding Contract Year in the Medical Care component of the Consumer Price Index for all Urban Consumers issued by the Federal Bureau of Labor Statistics.

6. <u>Lease of Equipment</u>. The Manager leases to the Provider, and the Provider lease from the Manager, the equipment described on Exhibit "A" attached hereto and made a part hereof, (the "Equipment"). From time to time, as additional equipment is required in connection with the Provider Locations, such equipment will be acquired by the Manager and leased to the Provider and, in such event such additional equipment will become subject to the terms and conditions of the Agreement (and will be deemed to be "Equipment") and the fees payable hereunder shall be adjusted to compensate the Manager for the fair market rental value of such equipment. The Manager shall be the exclusive provider of equipment to the Provider at the Provider Locations. Notwithstanding the foregoing to the contrary, Vassar has an option, under 6.1.4 of the Operating Agreement, to require that certain services be provided by the Radiologists subject to this Agreement; if Vassar waives such option with respect to a given service, then the Manager shall not be the exclusive provider of the equipment required for such service.

Other terms and conditions with respect to the lease of the Equipment by Manager to Provider (other than the equipment rental fees) are set forth on Exhibit "B" attached hereto and made a part hereof.

7. <u>Sublease of Real Estate</u>.

Manager hereby demises and subleases to Provider, and Provider hereby leases from Manager, the following property (collectively hereinafter referred to as the "Premises"):

(a) property at 191 Delafield Street, Poughkeepsie, New York, (the "Delafield Premises");

2348

(b) property located at West Cedar Street, Poughkeepsie, New York (the "West Cedar Street Premises").

From time to time, if additional or alternative premises are required in connection with the Provider's practice of Radiology which is subject to the terms of this Agreement, Manager will negotiate with property owners and either lease or acquire such premises and lease or sublease such premises, as the case may be, to Provider and, in such event the amounts payable hereunder shall increase or decrease based on the fair rental value for such premises.

The Provider shall comply with all terms and conditions of the underlying leases from the Owner to the Manager of any premises subleased hereunder by Manager from Provider.

8. <u>Fees</u>.

As the total compensation for the equipment leased hereunder by Manager to Provider, Manager shall be paid a fee per each procedure performed by the Provider as set forth below:

| Procedure | Fee per Procedure |
|---|---|
| Magnetic Resonance Imaging | $ 392.00 |
| CT Scan | $ 146.00 |
| Mammography Van Screening | $ 18.00 |
| X-Ray, ultrasound and office mammography | $ 21.00 |

Such equipment lease fees will be paid on a monthly basis within 60 days after the end of each month, based on procedures performed in such month.

As the total compensation for the Management Services provided hereunder by Manager to Provider, Manager shall be paid a fee equal to $90,000 per each Contract Year. Such compensation shall be paid in equal monthly installments of $7,500.00 commencing on June 1, 1996 and the first day of each month thereafter during the Term.

11

As the total compensation for the Billing Services provided hereunder by Manager to Provider, Manager shall be paid a fee equal to $295,000.00 per each Contract Year. Such compensation shall be paid in equal monthly installments of $24,583.33 commencing on June 1, 1996 and payable on the 21st day of each month thereafter during the Term.

As the total compensation for the Transcriptionist Services provided hereunder by Manager to Provider, Manager shall be paid a fee equal to $54,000.00 per each Contract Year. Such compensation shall be paid in equal monthly installments of $4,500. commencing on June 1, 1996 and the first day of each month thereafter during the Term.

As the total compensation for the real property leased hereunder by Manager to Provider, Provider shall pay all costs and expenses incurred by the Manager in connection with such real property leases, including all rent and additional rent payable under such leases of real property. Rental payments shall be made by Provider to Manager at least 5 days before the due date for such rent under Manager's lease with the owner of the subject premises.

The fees payable hereunder shall be adjusted every twelve months during the Term by mutual agreement of the parties with such adjustment to take effect as of the first day of the Contract Year.

9.  Bank Account; Payments.

12

2350

24. <u>Entire Understanding</u>.

This Agreement sets forth the entire agreement and understanding between the parties as to the matters contained herein, and merges and supersedes all prior discussions, agreements, and understandings of every kind and nature among them; no party shall be bound by any condition, definition or representation other than as expressly provided for in this Agreement.

25. <u>Waiver; Consents</u>.




26. <u>Further Action</u>.  Each party hereto agrees that it will execute and deliver such further instruments and will taken such further action as may be necessary to discharge, perform or carry out any of its respective obligations and agreements hereunder.


Executed on the 26th day of July, 1996

                            IMAGING SUPPORT SERVICES, LLC

                            By: _____

DUTCHESS RADIOLOGY ASSOCIATES, P.C.

By: _____

19

2357